# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

John R. Crosky,

        Plaintiff,

     v.                               **Case No. 2:09-cv-400**

                                           **JUDGE ALGENON L. MARBLEY**

Ohio Department of                        **Magistrate Judge Kemp**
Rehabilitation and Correction,
et al.,

        Defendants.

## OPINION AND ORDER

This matter is before the Court to consider the motion for summary judgment filed by the defendants. Also pending are several unopposed motions filed by the plaintiff including a motion for leave to file instanter a response to the motion for summary judgment, a motion for leave to file a supplemental response to the motion for summary judgment and a motion to amend the response. All of these unopposed motions are granted. In light of this, the motion for summary judgment has been fully briefed. For the following reasons, the motion for summary judgment will be granted.

## I. Background

Plaintiff John Crosky filed his complaint against the Ohio Department of Rehabilitation and Correction and several employees of the Chillicothe Correctional Institution including Warden Timothy P. Brunsman, Arville Duty, Gary Clever, Heather Howard, Charlie F. McKee, Kelly M. Thomas, Melissa Bartlett, Tammy Smith, D. Coffey, Lita Pritchard, Michael A. Eiring, Larry Grant, Glen Bryan, Sgt. DiSantis, Josh Thoroman, Katrina L. Ragland, Amanda J.

Ragland, Mal Payne, Teddi Engle, and Brian Wittrup. Mr. Crosky also named John and Jane Doe defendants. All individual defendants were named in both their individual and official capacities.

According to the complaint, Mr. Crosky was accused falsely by defendant Howard of molesting two children during a visit with his mother and a family friend on May 21, 2007. Mr. Crosky was immediately placed into disciplinary control where he eventually spent 87 days. Defendants Duty and Clever undertook an investigation on May 22, 2007, during which Mr. Crosky was threatened with transfer and physical harm and threats of criminal prosecution were made against his visitors. While in disciplinary control, Mr. Crosky was denied access to exercise and showers and confined in his room for up to 48 hours at a time. His mother was denied visitation with Mr. Crosky temporarily and his family friend was permanently barred from visiting him.

Mr. Crosky contends that several defendants altered official documents and forged his signature on hearing documents in an effort to legitimize Ms. Howard's accusations. He asserts that he "was subjected to numerous RIB hearing and re-hearings and went through a lengthy appeals process" which also resulted in a "cover-up" of the falsity of Ms. Howard's allegations. All of these actions, according to the complaint, resulted in Mr. Crosky's suffering "extreme mental cruelty." Following his release from disciplinary control, and he contends, "in retaliation to his various attempts to refute the groundless accusations of May 21, 2007," Mr. Crosky was transferred to the Lebanon Correctional Institution on August 17, 2007.

According to Mr. Crosky's affidavit attached to his complaint, he was subjected to unlawful RIB or local control hearings on June 1, 13, 19, 27, and 29, 2007. He contends that, at

all of these hearings, forged or falsified documents were used to find him guilty and subject him to unlawful treatment. Mr. Crosky contends that the CCI administration had targeted him as a result of his very public defense in the newspaper of a woman falsely accused by the Grove City Police Department.

Based on all of the above, Mr. Crosky asserts claims under 42 U.S.C. §1983 for violations of his First, Fifth, Fourteenth and Eighth Amendment rights. He also asserts a claim under 42 U.S.C. §1985 as well as civil RICO claims. Mr. Crosky seeks compensatory and punitive damages. Although Mr. Crosky filed his complaint *pro se* on April 21, 2009, he has been represented by counsel in this case since October 21, 2010,

All of the defendants have moved for summary judgment on all of Mr. Crosky's claims. Their first ground for summary judgment is that Mr. Crosky failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act, 42 U.S.C. §1997e. They also contend that they are entitled to summary judgment for various reasons with respect to the merits of Mr. Crosky's claims. First, they contend that the Ohio Department of Rehabilitation and Correction is entitled to sovereign immunity. Further, they assert that Mr. Crosky's constitutional rights were not violated by his placement in segregation, placement in local control, or transfer to another institution and that he received the due process to which he was entitled during his Rules Infraction Board hearings. They assert also that Mr. Crosky has no constitutional claim arising from threats allegedly made to him following the incident in the visiting room. With respect to Mr. Crosky's civil conspiracy and RICO claims, they maintain that Mr. Crosky has failed to set forth facts sufficient to state such claims. Finally, they contend that they are entitled to qualified immunity.

In response, Mr. Crosky addresses only the issues of exhaustion, due process, and qualified immunity. Mr. Crosky also appears to raise, for the first time, a claim for denial of access to the courts. In reply, defendants contend that Mr. Crosky has failed to assert an access to the courts claim. In his supplemental response, Mr. Crosky addresses the conspiracy issues through a declaration of plaintiff, a third annotated declaration of plaintiff, and a fifth annotated declaration of plaintiff attached to the supplemental response .

## II. Summary Judgment Standard

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). But "summary judgment will not lie if the ... evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir.1993). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52, 106 S.Ct. 2505. But the non-moving party "may not rest merely on allegations or denials in its own pleading." Fed.R.Civ.P. 56(e)(2); *see Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994). The non-moving party must present

"significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir.1993). When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989). Instead, the Court may rely on the evidence called to its attention by the parties. *Id.*

### III.  Factual Background

The record in this case is not insubstantial.  According to the Court's docket, seven depositions have been filed.  In addition to the affidavit attached to his complaint, and various other exhibits attached to his filings including declarations from his mother and family friend Carolyn Dickson, Mr. Crosky has submitted an eleven-page "Declaration" as well as five "Annotated Declarations," all sworn to by him and totaling well over 100 pages in length. Defendants also have filed numerous exhibits including at least nine declarations and the documents relating to Mr. Crosky's RIB hearing.  In fact, the briefs and exhibits relating to the motion for summary judgment alone comprise over 300 pages.  Accordingly, at first glance, it would appear that this is a highly fact-intensive case warranting a lengthy and detailed recitation.

The Court's review of this information, however, reveals that the overwhelming majority of it is focused on two primary issues.   The first issue is whether Mr. Crosky properly exhausted his administrative remedies before filing this action.  The second issue is Mr. Crosky's version of the events of May 21, 2007, and his attempts to demonstrate both the falsity of defendants' accusations and what, in his view, were unlawful actions taken to ensure that he was punished based on such accusations.

As will be discussed in detail below, the Court finds it appropriate under the circumstances of this case to proceed to a review of the merits of Mr. Crosky's claims consistent with 42 U.S.C. §1997e(c)(2). Consequently, the Court will not address the factual scenario underlying the exhaustion issue despite the parties', and particularly Mr. Crosky's, painstaking detailing of it. Further, as also will be discussed in depth below, because a detailed version of the underlying events of May 21, 2007, is not necessary to the Court's consideration of Mr. Crosky's claims, the Court will not devote a significant discussion to them, again despite Mr. Crosky's voluminous reiterations. Rather, it is sufficient for purposes of summary judgment on the claims presented by Mr. Crosky's complaint for the Court to note that he vehemently challenges the defendants' view of his actions that day which resulted in defendant Heather Howard removing him from the visiting room.

That being said, there is a largely undisputed chronology of events that is clear from the various evidentiary materials in the record noted above. On May 21, 2007, Mr. Crosky met with two visitors, his mother Ann Buchanan, and a family friend Carolyn Dickson in the visiting room at the Chillicothe Correctional Institution. Other inmates along with their visitors were present in the room as well. A three-year old girl and a sixteen-month old girl were among the visitors in the room. Ms. Dickson purchased popcorn for Mr. Crosky's table and, at some point, popcorn was shared with one of the children.

Based on her perception that Mr. Crosky had interacted inappropriately with these children, corrections officer Heather Howard had Mr. Crosky removed from the visiting room and sent to the shakedown room. See Motion for Summary Judgment Exhibit B, Declaration of Heather Howard. From the shakedown room, Mr. Crosky was taken to disciplinary control. The

following day he met with investigators Arville Duty and Gary Clever. As a result of this investigation, Mr. Crosky was charged with three different rules infractions - #3 causing or attempting to cause serious harm to another, #25 intentionally grabbing, or touching a staff member or other person without the consent of such person in a way likely to harass, annoy or impede, and #54 violation of visiting rules. *Id.* at Exhibit E, Declaration of Melissa Alexander fka Bartlett.

While still in segregation, Mr. Crosky appeared for a hearing before the Rules Infraction Board on June 1, 2007, without having been afforded 24-hour advance notice. Mr. Duty testified at this hearing but Ms. Howard did not. Mr. Duty had interviewed Ms. Howard and reviewed the conduct report for correctness. Based upon Mr. Duty's testimony and the conduct report, Mr. Crosky was found guilty of the rules violations arising from the May 21, 2007, incident. Motion for Summary Judgment Exhibit E-1. Mr. Crosky did not make a statement on his behalf at this hearing but did request the assistance of counsel. *Id.* The RIB's decision was affirmed by Warden Timothy Brunsman on June 4, 2007.

On June 13, 2007, Mr. Crosky appeared for a Local Control Placement Review Hearing. Motion for Summary Judgment Exhibit D, Declaration of Brian Wittrup. Based upon the findings of the RIB, the Local Control Committee recommended that Mr. Crosky be kept in local control and transferred to another institution. *Id.* On June 14, 2007, Mr. Crosky filed a notice of disciplinary appeal asserting his denial to all of Ms. Howard's charges. *Id.* at Exhibit E-1, p. 14. He also contended that he did not waive his right to 24-hour notice, was denied his request for a relevant witness, and there was no evidence introduced to support the RIB's decision. *Id.* Based on the issues raised in Mr. Crosky's appeal, by decision dated June 21, 2007, Warden Brunsman

ordered a re-hearing. *Id.* at p. 17. The purpose of the rehearing was to have Ms. Howard testify. Mr. Crosky received notice of this decision that same date. *Id.*

Mr. Crosky's re-hearing was held before the RIB on June 29, 2007, and Ms. Howard testified. Motion for Summary Judgment, Exhibit E-1, p. 11. Mr. Crosky pled not guilty but chose not to defend himself. *Id.* at p. 12. He again was found guilty of the rules violations. *Id.* at p. 9. On July 11, 2007, he filed another notice of disciplinary appeal claiming the same procedural irregularities he claimed in connection with his first hearing. *Id.* at p. 18. A Local Control review hearing was held on July 11, 2007, and the Committee again recommended that Mr. Crosky remain in local control. On August 17, 2007, Mr. Crosky was transferred to the Lebanon Correctional Institution, having spent 87 days in segregation at the Chillicothe Correctional Institution. Also, as a result of the incident on May 21, 2007, Mr. Crosky's mother, Ann Buchanan, was temporarily barred from visiting him, and his friend, Carolyn Dickson, was permanently barred.

Beyond these basic facts, Mr. Crosky makes additional factual allegations, which construed in the light most favorable to him, assert the following. He claims that during his meeting with Mr. Duty and Mr. Clever on May 22, 2007, these defendants threatened him with physical harm and transfer to Lucasville. Further, he states that Ms. Howard's version of the events of May 21, 2007, was completely fabricated and suspiciously unable to be confirmed by video evidence, and that these false allegations were perpetuated throughout the hearing process. Finally, he contends hearing documents were altered and his signature was forged. With all of this in mind, the question presented for the Court is whether all of these facts as alleged by Mr. Crosky, even if true, would support a finding that his constitutional rights were violated.

## IV. **Exhaustion**

Turning first to the exhaustion issue, defendants contend that they are entitled to summary judgment because Mr. Crosky failed to exhaust his administrative remedies as required by 42 U.S.C. §1997e(a). In support of their position, they have submitted the affidavit of Linda Coval, Deputy Chief Inspector for ODRC who handles inmate appeals and direct grievances. *See* Motion for Summary Judgment Exhibit G. According to Ms. Coval's affidavit, Mr. Crosky did not file a notification of grievance regarding the May 21 incident but did file an informal complaint on August 1, 2007, regarding a search of his cell and legal materials. *Id*. at ¶8. Further, according to Ms. Coval, Mr. Crosky would be unable to grieve the decisions of the Rules Infraction Board and Local Control Committee. *Id*. at ¶9. In response, Mr. Crosky has filed a 39-page "First Annotated Declaration," containing an additional 43 pages of attachments, addressed to the grievance issue.

Generally speaking, "[t]he requirement to exhaust administrative remedies in mandatory and 'applies to all prisoners seeking redress for prison circumstances or occurrences.'" *Carr v. Lavender*, 2011 WL 5834967, *1 (S.D. Ohio November 21, 2011)(Frost, J.) quoting *Porter v. Nussle*, 534 U.S. 516, 520 (2002). However, §1997(e) allows a court to dismiss a claim on the merits despite a prisoner's failure to exhaust his administrative remedies. 42 U.S.C. §1997e(c)(2). As explained by the court in *Bowen v. Cady*, 2010 WL 148843 at *3 fn. 2 (E.D. Mich. Jan. 13, 2010),

> Although this provision directly addresses a claim for relief that fails to state a claim on its face, it is equally applicable where the case has already progressed to the summary judgment stage. This provision is akin to the habeas corpus rule which permits a court to dismiss unexhausted claims on the merits. Much like the habeas exhaustion requirement, the PLRA exhaustion requirement is designed to promote administrative and judicial efficiency, and to show respect for the states

by allowing the states the first opportunity to correct constitutional errors. *See, e.g., Brown v. Toombs*, 139 F.3d 1102, 1103-04 (6th Cir.1998) (per curiam); *Sanders v. Elyea*, No. 96 C 4559, 1998 WL 67615, at *5 (N.D.Ill. Feb.10, 1998). And, as the habeas courts have noted, exhaustion of meritless constitutional claims does not promote these interests. *See Granberry v. Greer*, 481 U.S. 129, 135, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir.1987). Section § 1997e(c)(2) recognizes this fact, and is equally applicable notwithstanding the fact that this case is now before the Court on a motion for summary judgment. Accordingly, because as discussed below plaintiff's claims are without merit, the Court should grant summary judgment on the merits rather than require further exhaustion. *Cf. Bastek v. Federal Crop Ins. Corp.*, 975 F.Supp. 534, 536 (S.D.N.Y.1997) ("However, when one of the purposes is not furthered, exhaustion is normally not required."), aff'd, 145 F.2d 90 (2d Cir.1998), petition for cert. filed, No. 98-320 (Aug. 20, 1998); *Unger v. U.S. West, Inc.*, 889 F.Supp. 419, 424 (D.Colo.1995) ("If these purposes would not be furthered, then administrative exhaustion is fruitless."); *Coles Express v. New England Teamsters & Trucking Indus. Pension Fund*, 702 F.Supp. 355, 361 (D.Me.1988) ("Exhaustion of administrative remedies is not compelled where the policies it was intended to further are not implicated, as where there is no need for the superior expertise of an administrative body, where judicial economy would not be promoted and where the statutory scheme created by Congress would not be ignored.").

Similarly, other courts have found that the issue of exhaustion is not required to be considered when the claims clearly fail on their merits. *Thomas v. Brockbank*, 195 Fed.Appx. 804 (10th Cir. 2006); *Carr v. Tousley*, 2009 WL 1514661, *16 (D. Idaho May 27, 2009) ("the court is not aware of any authority binding on this court which straightjackets the court into deciding the exhaustion question before the merits of the summary judgment motions"). *See also Woodford v. Ngo*, 548 U.S. 81, 101 (2006)(the PLRA exhaustion requirement is not jurisdictional and district courts "may dismiss plainly meritless claims without first addressing what may be a much more complex question, namely, whether the prisoner did in fact properly exhaust available administrative remedies."). Because, as set forth below, Mr. Crosky's claims fail on their merits, the Court will not address the issue of exhaustion.

## V.  Merits Analysis

## A.  <u>Sovereign Immunity</u>

The ODRC has moved for summary judgment on grounds of sovereign immunity.  Mr.
Crosky has not responded to this argument.  The Eleventh Amendment to the United States
Constitution bars suits against either a state or agencies of a state by citizens of that state.
*Edelman v. Jordan*, 415 U.S. 651 (1974).  There is no question that ODRC is an agency of the
State of Ohio.  Further, the State of Ohio has not waived its sovereign immunity in federal court.
*Moss v. Columbus Bd. of Educ.*, 98 Fed.Appx. 393, 395 (6th Cir. 2004).  Consequently, the
motion for summary judgment will be granted as to Mr. Crosky's claims against the ODRC.
Further, because the Eleventh Amendment bars suits for money damages against state employees
sued in their official capacity, the individual defendants also are entitled to summary judgment
on Mr. Crosky's  claims brought against them in their official capacities.  *See Moore v. City of
Harriman*, 272 F.3d 769, 772 (6th Cir. 2001).

## B. <u>Fifth, Fourteenth and Eighth Amendment Claims</u>

According to the complaint, Mr. Crosky's first claim is a claim under 42 U.S.C. §1983
arising from violations of his Fifth, Fourteenth and Eighth Amendment rights.  According to the
very cursory allegations in the complaint in support of this claim, Mr. Crosky contends that his
constitutional rights were violated in connection with the investigation of the child molestation
charges undertaken by defendants Duty, Clever, and a Jane Doe State Highway Patrol
Investigator.  Mr. Crosky also asserts that defendant Brunsman actively participated in the
constitutional violations because he had knowledge of the fabricated allegations.  Construing the
complaint as a whole, however, Mr. Crosky appears to be claiming more specifically that his due
process rights were violated in connection with his RIB hearing and by his subsequent transfer to

the Lebanon Correctional Institution. This latter interpretation is consistent with the parties' discussion of the issue in their briefing.

There is no question that, for a number of years, the Due Process Clause played an active role in the courts' ability to scrutinize the results of prison disciplinary hearings. Beginning with the Supreme Court's decision in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which held that the State of Nebraska had created a constitutionally-protected liberty interest in "good time credits" and that it could not take those away from an inmate without following minimum requirements relating to notice, an opportunity to be heard, and a decision based on "some evidence," the federal courts required such procedures to be applied to a variety of prison disciplinary proceedings. That procedure became more refined, and more broadly applicable, when the Supreme Court determined that any time a prison regulation used mandatory language (such as the word "shall") to describe a process by which an inmate would be disciplined if he or she committed some particular institutional offense, the state had created a "liberty interest" which protected an inmate from discipline unless the basis of such discipline were proved at a hearing to which the Due Process Clause applied. *See Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).

After that time, the case law is replete with decisions dealing with the issue of whether an inmate who received discipline such as transfer to segregation, even for a short period of time, had received all the process which was constitutionally due. *See, e.g., Hensley v. Wilson*, 850 F.2d 269 (6th Cir. 1988); *Franklin v. Aycock*, 795 F.2d 1253 (6th Cir. 1986). All that changed in 1995 when the Supreme Court decided *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In *Sandin*, the Court was asked to re-examine the fundamental premise of

*Wolff* and *Hewitt*, which was that most prison disciplinary proceedings implicated some liberty

interest of the inmate being disciplined, especially if the prison regulation at issue was phrased in

mandatory terms. Finding that the focus on the language of such regulations "strayed from the

real concerns undergirding the liberty protected by the Due Process Clause," the Supreme Court

held that the only type of consequence which triggered a due process analysis was one which

could be described as an "atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In other words, unless, as a result of

a prison disciplinary proceeding, an inmate suffered some particularly unusual or serious

punishment, the Due Process Clause simply did not apply to the proceeding, because the inmate

would not have suffered from any loss of the type of liberty protected by that constitutional

provision. Examples of such unusual or severe consequences (again, measured against what

types of things a prisoner might reasonably expect to go along with being in prison to begin

with) would be the involuntary commission to a mental hospital, or the involuntary

administration of psychotropic drugs. *See generally Bazzetta v. McGinnis*, 430 F.3d 795, 804

(6th Cir. 2005). Consequences such as the transfer to another prison (even a maximum security

facility) or the loss of visitation privileges, however, do not fall within this category. *See id.*

      It is not disputed that Mr. Crosky spent 87 days in some form of segregation - either in

"the hole" as he describes in his complaint, in administrative segregation as argued in his

summary judgment response, or local control (isolation) as asserted by the defendants.

Regardless, that type of deprivation clearly is not something which courts have found to be

unusual or atypical for an inmate to experience, and it is not an actionable loss of a

constitutionally-protected liberty interest. For example, in *Jones v. Baker*, 155 F.3d 810 (6th Cir.

1998), the Court of Appeals held that a two and-one-half year stay in administrative segregation was not a constitutionally-significant loss of liberty, noting that administrative segregation is not the type of hardship "implicating a protected liberty interest" and this holds true even if the inmate has been in such segregation for an "extraordinarily long time ...." *Id*. at 812, citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995); *see also McMann v. Gundy,* 39 Fed.Appx. 208, 210 (6th Cir. 2002) (five months in administrative segregation not an atypical and significant hardship); *Merchant v. Hawk-Sawyer*, 37 Fed.Appx. 143 (6th Cir. 2002) (unpublished) (sixteen months in administrative detention and twenty-one months in a special housing unit did not amount to due process violation or cruel and unusual punishment); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (no atypical or significant hardship when inmate placed in segregation for one year upon being found guilty of possession of illegal contraband and assault where reclassification delayed due to overcrowding)

Further, even if Mr. Crosky's due process rights were implicated, there is no dispute that he received the process to which he was entitled. By his own admission, he appeared at several hearings - both before the RIB and the local control committee. Moreover, Mr. Crosky cannot plausibly be suggesting that there was no evidence to find him guilty of various rules violations when the crux of his claim is that the evidence relied upon was false. The alleged discrepancies in the conduct report identified by Mr. Crosky, however, are insufficient to raise a genuine issue of material fact. There is no question that "a prisoner has no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 Fed.Appx. 131, 132 (6th Cir. 2003) citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) . As explained by the Court in *Crum v. Wilkinson*, 2006 WL 64607, *6 (S.D. Ohio January 11, 2006) (Graham, J.)

False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing. *See Cale v. Johnson*, 861 F.2d 943, 953 (6th Cir.1988) (Nelson, J., concurring). The general rule, as stated in *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986) provides that:

> [A] prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law.

Thus, where a prisoner is provided due process, no constitutional violation results from his being falsely accused of misconduct. Because [the prisoner] was provided a due process hearing for each charge of misconduct, his constitutional rights were not violated and he may not maintain a Section 1983 claim for the alleged false misconduct reports.

*Munson v. Burson*, 210 F.3d 372, 2000 WL 377038, at *4 (6th Cir.2000). A false prison misconduct report does not violate due process when followed by fair post-deprivation proceedings.

Further, to the extent that Mr. Crosky claims any constitutional violation arising from his transfer to Lebanon, he has no constitutional right to be incarcerated in a particular institution, *see Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), or to enjoy a particular security classification, *see Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). Consequently, the defendants are entitled to summary judgment on this claim.

Mr. Crosky's effort to frame his allegations relating to his time in segregation as an Eighth Amendment violation is equally unavailing. Mr. Crosky suggests that his extended stay in segregation violated his Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment prohibits any punishment which violates the civilized standards of humanity and decency, or involves the unnecessary and wanton infliction of pain.

*See Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). To prove an Eighth Amendment violation, an inmate must show that he has been deprived of the minimum civilized measures of life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society and is insufficient to support an Eighth Amendment claim. *Estep v. Million*, 191 F.3d 451 (Table)(6th Cir. 1999) citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Moreover, to the extent Mr. Crosky suggests that the verbal harassment or threats he allegedly endured from Mr. Duty or Mr. Clever constitute an Eight Amendment violation, he is mistaken. Neither verbal harassment nor threats constitute punishment within the context of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 954-955 (6th Cir. 1987); *see also Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004). Consequently, defendants' motion for summary judgment will be granted as to Mr. Crosky's Eighth Amendment claim.

## C.  First Amendment Claim

Mr. Crosky's second claim is that his First Amendment rights were violated when several of the defendants retaliated against him by "fabricat[ing] malicious allegations against him and his mother and his friend." Defendants have interpreted this claim as relating to the threats and derogatory comments allegedly made by Mr. Duty or Mr. Clever when Mr. Crosky "exercised his Constitutional right to remain silent and refused to answer questions regarding the incident in the visiting room involving two small children." *See* Motion for Summary Judgment, p. 14. Mr. Crosky has not shed any further light on this claim in his response, instead choosing for the first time to frame his First Amendment claim as one for a violation of his right of access to the courts.

To the extent the Court need consider any access to the courts claim raised for the first

time in a summary judgment response, Mr. Crosky's claim can be disposed of quickly. There is

no question that prisoners have a fundamental right of access to the courts. *Bounds v. Smith*, 430

U.S. 817 (1977). However, a prisoner asserting a denial of access to the courts claim must allege

that he suffered an actual injury. *See Lewis v. Casey,* 518 U.S. 343, 349 (1996). To succeed, a

plaintiff must show that the actions of prison officials hindered the prisoner's efforts to pursue a

legal claim. *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). Mr. Crosky has made no

such showing here. There is some indication in his first annotated declaration attached to his

summary judgment response and its corresponding exhibits that he was denied requested access

to his legal papers for work on his appeals in the Tenth District Court of Appeals. Further, there

is some statement in the complaint in connection with his RICO claims that he was unable to

defend his appeals in the Tenth District or the Ohio Supreme Court. However, Mr. Crosky has

failed to submit any evidence of actual injury. Moreover, according to one of the exhibits

attached to his response, Mr. Crosky had legal counsel. *See* Doc. #78-10, p.34. The Sixth Circuit

has consistently held that an inmate's right of access to the courts is fully protected if he is

represented by counsel. *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 104 (6th Cir. 1991); *Holt v. Pitts*,

702 F.2d 639 (6th Cir. 1983). Consequently, the defendants are entitled to summary judgment on

any access to the courts claim presented by Mr. Crosky.

The Court will now address any First Amendment retaliation claim asserted by Mr.

Crosky. In order to succeed on such a claim, a plaintiff must show that: "(1) the plaintiff

engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would

deter a person of ordinary firmness from continuing to engage in that conduct; and (3) ... the

adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus–X v.*

*Blatter*, 175 F.3d 378, 394 (6th Cir.1999)( en banc ).

While Mr. Crosky has framed his First Amendment claim in his complaint as one for retaliation, on one hand, it may be that he is attempting to state a claim for defamation. However, it is well-settled that defamation, without more, does not state a claim under 42 U.S.C. §1983. That is, harm or injury to reputation does not result in a deprivation of any "liberty" or "property" protected by the Due Process Clause. *Paul v. Davis*, 424 U.S. 693 (1976); *see also Siegert v. Gilley*, 500 U.S. 226, 233 (1991)("Defamation, by itself, is a tort actionable under the laws of most states, but not a constitutional deprivation."); *Mertick v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993)("there exists 'no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.'").

On the other hand, it may be, as defendants suggest, that Mr. Crosky is claiming that the alleged defamation itself constitutes the adverse action required to succeed on a retaliation claim. While the phrase "adverse action" originated in the employment context, the Sixth Circuit has recognized that "any action that would deter a person of ordinary firmness from exercising protected conduct will suffice, which may include harassment or publicizing facts damaging to a person's reputation." *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010). Further, [t]he analysis of this factor must be tailored to the circumstances such that prisoners might have to endure more than public employees, who in turn might have to endure more than the average citizen." *Id.* Here, Mr. Crosky has not alleged what type of constitutionally protected conduct he was engaging in nor has he suggested that a person of ordinary firmness would be deterred from continuing to engage in it. *Kelly v. Sulfsted*, 2008 WL

886140, *12 (S.D. Ohio 2008); *Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005). As noted above, defendants suggest that the constitutionally protected conduct was Mr. Crosky's claimed right to remain silent during his interview with Mr. Duty and Mr. Clever about the events of May 21, 2007. Mr. Crosky has not provided any insight into this issue. Another view suggests that the issue may be whether Mr. Crosky was deterred by the alleged threats from challenging the defendants' version of the May 21 events. There is no question based on the record in this case that he was not. Consequently, the defendants are entitled to summary judgment on Mr. Crosky's First Amendment retaliation claim.

## D. The Conspiracy Claims

According to the complaint, Mr. Crosky is asserting a conspiracy claim under 42 U.S.C. §1985. That statute prohibits conspiracies interfering with civil rights. Subsection (1) of §1985 relates to a conspiracy to keep a person from accepting or holding an office or preventing him from discharging his duties. Subsection (2) deals with a conspiracy to obstruct justice with the intent to deny equal protection of the law. Subsection (3) is directed to conspiracies to deprive persons or classes of persons of federally protected rights based on some protected class such as race, gender, or religion. *Williams v. Wayne County*, 2011 WL 479959, *5 (E.D. Mich. Feb. 4, 2011).

In his complaint, Mr. Crosky does not identify under which particular prong of §1985 his claim arises. Rather, he alleges that the defendants conspired to "oppress Plaintiff in the free exercise and enjoyment of his rights under the Constitution, including his right to freedom of speech; to be free from cruel and unusual punishment; and to not be subject to persecution based upon his personal religious beliefs." Complaint, ¶41. Based on this allegation, the Court

construes Mr. Crosky's claim as one brought under subsection (3).

To prevail on a claim for relief under 42 U.S.C. §1985(3), a complaint must demonstrate that defendants "1) conspired 2) for the purpose of depriving any person or class of the equal protection of the laws, and that 3) one or more of the conspirators committed an act in furtherance of the conspiracy, 4) 'whereby another was injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States.'" *Watkins v. New Albany Plain Local Schools*, 711 F.Supp.2d 817, 834 (S.D. Ohio 2010) (Graham, J.) quoting *Domokur v. Milton Township Bd. of Trustees*, 2007 WL 2688175 (N.D. Ohio Sept. 10, 2007) (citations omitted).

> As explained by the Court in *Watkins,*
>
> The claim must be based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *O'Neill v. Grayson County War Memorial Hospital*, 472 F.2d 1140 (6th Cir. 1973) (a §1985(3) claim "must be founded on a class-based invidious discrimination."). That is, 42 U.S.C. §1985(3) covers "only those conspiracies against: (1) classes who receive heightened protection under the Equal Protection Clause; and (2) those individuals who join together as a class for the purpose of asserting certain fundamental rights." *Warner v. Greenebaum, Doll & McDonald*, 104 Fed.Appx. 493, 498 (6th Cir. 2004) (citations omitted). A class covered under § 1985(3) must be "more than a group of individuals who share a desire to engage in conduct that the §1985(3) defendant disfavors." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993).

*Id*. at 834.

Because Mr. Crosky has provided no evidence that the violations he alleges were motivated by a class-based animus, he cannot succeed on a conspiracy claim under 42 U.S.C. §1985(3). Consequently, the defendants' motion for summary judgment will be granted as to this claim.

To the extent that Mr. Crosky may be attempting, as defendants suggest (perhaps based on the language of the complaint at paragraph 45), to pursue a civil conspiracy under §1983, his claim fares no better. A civil conspiracy is an agreement between two or more people to injure another individual by unlawful action. *See Collyer v. Darling*, 98 F.3d 211, 229 (6th Cir.1996), cert. denied, 520 U.S. 1267, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997). To succeed on a claim for conspiracy to violate a right protected by §1983, plaintiff must demonstrate facts showing a single plan existed, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to him. *Id.* Moreover, plaintiff must establish facts showing not only an agreement by defendants to violate plaintiff's constitutional rights, but also an actual deprivation of a constitutional right. *Stone v. Holzberger*, 807 F.Supp. 1325, 1340 (S.D.Ohio 1992) (Spiegel, J.) ("plaintiff must allege and prove both a conspiracy and an actual deprivation of rights; mere proof of conspiracy is insufficient to establish a section 1983 claim"). As set forth above, Mr. Crosky has failed to establish the deprivation of any constitutional right. Consequently, defendants are entitled to summary judgment to the extent Mr. Crosky is attempting to assert a conspiracy claim under 42 U.S.C. §1983.

### E. Civil RICO Claims

Mr. Crosky also asserts civil RICO claims under 18 USC §1964 for violations of 18 §§1962(c) and (d). The essence of Mr. Crosky's claims is that the defendants engaged in a pattern of racketeering activity that deprived him of his ability to "properly Defend his appeals in the Ohio Tenth District Court of Appeals and The Supreme Court of Ohio." As predicate acts, Mr. Crosky asserts the obstruction of justice, the obstruction of criminal investigations,

obstruction of state or local law enforcement, and tampering with a witness, all in connection with the events of May 21, 2007, and ranging from the investigation through the RIB hearing process. In their motion for summary judgment, the defendants contend that Mr. Crosky has failed to demonstrate the facts required to prevail in a civil RICO action.

The RICO civil remedy provision provides that: "[a]ny person injured in his business or property by reason of a violation of section 1962 of this Chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." *See* 18 U.S.C. §1964(c). In order to prevail on a civil RICO claim, a plaintiff must demonstrate: 1) that a violation of §1962 has occurred; 2) that he has suffered an injury to his "business or property;" and 3) that his injury was proximately caused by the violation of §1962. *See* 18 U.S.C. §1964(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *James v. Meow Media, Inc.*, 90 F.Supp.2d 798, 813 (W.D. Ky. 2000). "Personal injuries and mental suffering do not confer a person with standing to bring a RICO claim because those types of damages are not injuries to "'business or property.'" *James*, at 814; *see also Fleischhauer v. Feltner*, 879 F.2d 1290, 1300 (6th Cir. 1989), cert. denied, 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990).

Here, no genuine issue of material fact exists as to any injury to Mr. Crosky's business or property. Mr. Crosky merely states in conclusory fashion in the complaint that "[he] and his business has been harmed and suffered injury." Moreover, the only injury he asserts can best be described as an access to the courts claim. As discussed above, an access to the courts claim arises under 42 U.S.C. §1983. Claims under that section "are best characterized as personal

injury actions." *Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009) quoting *Owens v. Okure*, 488 U.S. 235, 240-41. As such, it is not the kind of injury for which 18 U.S.C. §1964 provides a private remedy. Consequently, defendants are entitled to summary judgment on Mr. Crosky's civil RICO claims.

## VI. Conclusion

For all of the reasons stated above, the unopposed motions (#77, #89, and #91) are **GRANTED**. The motion for summary judgment (#72) is **GRANTED**. This case is **DISMISSED WITH PREJUDICE**. The Clerk shall enter judgment in favor of the defendants.

**IT IS SO ORDERED**.

       s/Algenon L. Marbley
Algenon L. Marbley
United States District Judge

Dated: March 8, 2012